**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x

DESIREE J. TRIPPET,                                                  **Case No.:** 19-cv-881

                       Plaintiff,
        - against –                           **VERIFIED COMPLAINT**

FIVE STAR ELECTRIC CORP., and LOCAL UNION
#3 IBEW,                                       **PLAINTIFF DEMANDS**
                                                  **A TRIAL BY JURY**

                       Defendants.
------------------------------------------------------------------x

Plaintiff DESIREE J. TRIPPETT ("Plaintiff"), by and through her attorneys, White, Hilferty & Albanese,LLP, hereby complains of Defendants, upon information and belief as follows:

<h3 align="center">NATURE OF THE CASE</h3>

1.   Plaintiff brings this action alleging that Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, and the New York State Human Rights Law, N.Y. Exec. Law 290. *et seq.*, and the New York City Human Rights Law, N.Y.C. Admin Code 8-101, *et seq.* and seeks damages to redress the injuries she suffered as a result of being discriminated against on the basis of her sex as well as being subjected to unlawful sexual harassment and retaliation.

<h3 align="center">JURISDICTION & VENUE</h3>

2.   Jurisdiction of this Court is proper 42 U.S.C. § 2000, *et seq.*, and 28 U.S.C. §§ 1331 and 1343.

3.   The Court has supplemental jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367.

4.   Venue is proper in this district pursuant to 28 U.S.C. §1391(b) as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PROCEDURAL REQUIREMENTS

5.   Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

6.   Plaintiff received from the EEOC a notice of right-to-sue, dated November 26, 2018.

7.   Plaintiff has filed this action within 90 days of receipt of said notice of right-to-sue.

## THE PARTIES

8.   Plaintiff DESIREE J. TRIPPET was and is a resident of the State of New York, Suffolk County.

9.   Defendant FIVE STAR ELECTRIC CORP. ("Defendant Five Star") is located in the State of New York, Queens County.

10.   Defendant LOCAL UNION NO. 3 IBEW ("Defendant Local #3") is located in the state of New York, Queens County.

11.   At all times relevant, Defendant Five Star owns, operates, and/or maintains Five Star in Queens County, New York.

12.   At all times relevant, Defendant Local #3 owns, operates, and/or maintains Local #3 in Queens County, New York.

## MATERIAL FACTS

13.   For 23 years, Plaintiff worked as an Electrician and was a member of Defendant Local #3. For the past 10 years, Plaintiff functioned as a Shop Steward.

2

14.   On November 17, 2015, Defendant Five Star hired Plaintiff as an Electrician and immediately assigned her to Riverside 5, located in Manhattan. Plaintiff also functioned as Shop Steward for Defendant Local #3 at this work site.

15.   Throughout Plaintiff's employment, she performed her job duties in an exemplary manner.

16.   In April 2016, Defendant Local #3's Business Representative Rick Rollins slapped Plaintiff's buttocks while she walked up the stairs. Rollins then stated, "I always wanted to do that."

17.   On multiple occasions throughout Plaintiff's employment, Rollins repeatedly engaged in sexually-related conversation despite Plaintiff's objections.

18.   Subsequently, Plaintiff reported Rollins' inappropriate conduct to Defendant Local #3. Subsequently, Defendant Local #3 employees retaliated against Plaintiff for her complaints against Rollins.

19.   On May 25, 2016, Plaintiff overhead an inappropriate conversation between three of her male colleagues who were unaware that Plaintiff was in the building. Specifically, Plaintiff overheard Vlad Levrints state how nice Plaintiff's "titties look." In response, Brian Mahoney stated, "I heard she slept with every man on the Joint Board to get her Shop Steward card." John Divilly then stated, "If she takes off all her clothes, her whole body will drop to the ground."

20.   On May 27, 2016, Plaintiff reported the incident to General Forman Steve Goldstein and Second-in-Command Rick Sciarrone, as well as Rollins as her Business Representative. In response, Goldstein asked Plaintiff if she wished to press charges, have the workers transferred, or do nothing. Plaintiff expressed that she did not want to press charges; however, that she wanted the workers removed from the job site, or at least have Divilly

transferred. Nevertheless, Goldstein refused to transfer Divilly, claiming that he was one of his "best workers."

21. Instead, Goldstein stated that Plaintiff "needed thicker skin" and insisted that she knew "how these guys are." Goldstein's dismissive conduct implied that Plaintiff should accept the sexual harassment to which she was subjected.

22. Subsequently, Goldstein disclosed Plaintiff's complaints against her male colleagues, to those very same male colleagues, whom she later overheard speaking about her in a negative manner and disclosing her complaints against them to other male employees.

23. Accordingly, Goldstein's disclosure further intensified the hostile work environment to which Plaintiff was subjected by Defendant.

24. During this time, Plaintiff repeatedly asked Rollins to visit her work site to address the gender discrimination and harassment to which she was subjected by her male colleagues. However, Rollins failed to address or ameliorate the situation. Plaintiff relentlessly contacted Rollins multiple times; however, each time Plaintiff spoke to him, she was told that he [Rollins] was too busy. On one occasion, Rollins told Plaintiff he was "going to get his drink on," and another time Rollins inappropriately stated he "was going to Hempstead on a booty call."

25. Despite Rollins' dismissive treatment of Plaintiff regarding her sexual harassment complaints, in early 2016, Rollins promptly addressed a situation during which a female member accused a male member of sexual harassment. Rollins immediately transferred the accused harasser to another job in order to protect him from disciplinary consequences.

26. In late May 2016, Plaintiff learned that Rick Sciarrone warned her harassers Divilly, Mahoney and Levrints not to speak about Plaintiff's anatomy. In response, Divilly asked

4

why they should listen to Plaintiff and offensively stated, "She's dumb and has the education of a three-year-old."

27. On June 1, 2016, Rick Sciarrone asked Plaintiff whether everything was okay, to which Plaintiff expressed her disappointment with how Goldstein handled her sexual harassment complaint.

28. Subsequently, Goldstein requested that Plaintiff be patient and allow Divilly to be transferred when he returned from his vacation.

29. On June 8, 2016, in further retaliation against Plaintiff, upon her return to the Five Star job site, she observed a noose hanging in front of the shanty. Plaintiff believed the noose was hung by a Local #3 member/employee.

30. Accordingly, Plaintiff immediately texted Rollins, Raymond Melville and Business Manager Joseph Sanigate about the discriminatory incident. In response, Plaintiff was verbally attacked for her complaint and reminded that Defendant Local #3 maintained a "good old boys' club." Further, the individuals threatened that Plaintiff's stance against the misogyny and pervasive hostile work environment would not be tolerated.

31. Subsequently, Plaintiff requested that Local #3 relocate her to another borough so that Rollins would no longer represent her.

32. That same day, Defendant Local #3's Recording Secretary Thomas J. Clearly issued the Executive Board's determination on Plaintiff's charges against Goldstein, Divilly, Mahoney and Levrints. Specifically, the Executive Board determined that the four men were partially guilty of violating Defendant Local #3's policies.

33.   On June 9, 2016, Plaintiff again complained to Rollins about the May 2016 sexual harassment to which she was subjected. However, Rollins dismissed her complaint and refused to ameliorate the situation.

34.   On June 14, 2016, Rollins contacted General Superintendent Kenneth Benfante regarding Plaintiff's sexual harassment complaints and advised Plaintiff to contact Benfante to handle the matter.

35.   On June 15, 2016, Plaintiff attempted to speak with Rollins about the May 2016 sexual harassment incident and work environment. During the conversation, Plaintiff expressed how she felt as though if it were Rollins' daughter in Plaintiff's situation, he would have immediately met with her and would not allow her to be treated in such manner. In response, Rollins explicitly stated, "Who the fuck do you think you're talking to? You better find a better way to fucking talk to me and don't call my phone with bullshit like that!" Rollins then hung up on Plaintiff.

36.   Following a Lewis Latimer Club meeting, which is sanctioned by Local #3, Rollins yelled out in front of multiple members of the club, all of whom were Shop Stewards and members of Local #3, "Yo Desiree! Get over here! After this job with Five Star that you are on is complete, you will never get another Shop Steward's ticket again. You and I aren't working out. Who the fuck do you think you are talking to me like that, and about my family like that? Who are you to compare yourself to them?" This conduct evinces the hostile work environment and retaliation that Rollins' subjected Plaintiff to.

37.   The following day, Plaintiff met with Super of Defendant Five Star Benfante to address the May 25, 2016 incident. They discussed the situation and scheduled a meeting for the following day.

38. On June 16, 2016, Plaintiff attended the meeting with Defendant Local #3's sexual harassment Representative Maureen Stiger and Diversity Representative Marc Brown. Notably, Rollins refused to attend the meeting because he believed it was "unimportant."

39. During the meeting, Benfante advised the Goldstein that he inappropriately handled the situation and that his conduct violated Defendant Five Star's policies and procedures. In response, Goldstein claimed that Plaintiff never told him that she was subjected to sexual harassment and that he believed it was "a little mix up." In response to Goldstein's statements, Rick Sciarrone stated that Goldstein was not being honest, and that Plaintiff indeed informed both Sciarrone and Goldstein about what occurred two days after the May 2016 incident.

40. Subsequently, Benfante summoned Mahoney to the meeting to question him about the incident. Mahoney falsely stated that none of Plaintiff's statements occurred and that he thought that Plaintiff and himself were friends.

41. Thereafter, Benfante questioned Levrints about the incident. Levrints alleged that the situation never occurred.

42. During this time, Divilly was on vacation and therefore, was not interviewed by Defendants.

43. Benfante then summoned Robert Sparks to the meeting, who witnessed the incident. Sparks stated that he witnessed the incident between Plaintiff and the male colleagues on May 25, 2016 and his version of events supported Plaintiff's allegations. Further, Sparks offered to be a witness in the matter.

44. Lastly, Benfante questioned Sonia Gregorio, who also substantiated Plaintiff's sexual harassment complaint against the men based upon the information that Mahoney, Divilly

and Levrints relayed to Gregorio. Notably, Gregorio was subjected to sexual harassment by another male colleague.

45.   On June 17, 2016, Defendant Five Star terminated the employment of Divilly, Levrints and Mahoney. Benfante afforded Goldstein a lateral transfer, not a demotion.

46.   In September 2016, Defendant Local #3 relocated Plaintiff to another job site. Accordingly, Kenneth Forsberg became her Business Representative, who was Rollins' colleague. Forsberg then joined with Rollins to further retaliate against Plaintiff and reprimanded Plaintiff without any legitimate basis when she performed Steward functions.

47.   Subsequently, Defendant Local #3 assigned Plaintiff to work for Egg Electric for approximately two months and then assigned her to per diem jobs at Madison Square Garden and the Jacob Javits Convention Center in New York City.

48.   Once the per diem jobs became slow, Plaintiff requested additional work from Forsberg, who advised Plaintiff that he did not have any work for her and that she should revisit Defendant Local #3's employment window and work as a Journeywoman instead of a Shop Steward.

49.   Forsberg then sarcastically apologized to Plaintiff stating, "It's a shame because I knew your dad and your brothers for so long and I am sorry I have to do this."

50.   As a result of Forsberg's treatment, Plaintiff contacted Melville to report the retaliation to which she was subjected by Forsberg due to her sexual harassment complaints. Melville advised Plaintiff that he would speak to Forsberg and that Plaintiff would return to work as a Shop Steward immediately.

51.   Later that day, Forsberg immediately offered assignments to Plaintiff.

52. Nevertheless, Forsberg then reassigned Plaintiff to work for Solar Electric, and continued to unlawfully retaliate against her.

53. On November 30, 2016, Plaintiff commenced Workers' Compensation leave due to the anxiety and stress she endured as a result of the sexual harassment and retaliation to which she was subjected by Defendant Local #3.

54. On December 1, 2016, Plaintiff wrote a detailed letter to Melville regarding the incident as well as the retaliation to which she was subjected after reporting the sexual harassment.

55. On December 12, 2016, Plaintiff filed a police report with the Suffolk County Police Department regarding an incident that occurred that morning in which an individual slashed her tires. Specifically, Plaintiff expressed to the Officer that she was in a lawsuit with Defendant Local #3 and strongly suspected that a Local #3 member was responsible for the damage to her vehicle.

56. On February 21, 2017, Defendant Local #3's Business Manager Christopher Erickson issued Plaintiff a letter advising that Defendant Local #3 conducted a "thorough investigation" of her serious complaints against Rollins and determined "that there was insufficient evidence to support your complaints and accusations." Further, the letter stated, "Therefore, I will not terminate Mr. Rollins from his position as a Business Representative, nor will I otherwise discipline him."

57. On March 3, 2017, Plaintiff wrote a letter to Erickson refuting the February 21, 2017 determination.

58. On March 7, 2017, Plaintiff filed a Charge of Discrimination against Defendant Local #3 with the New York State Division of Human Rights ("NYSDHR").

59.     On March 9, 2017, Erickson issued Plaintiff a letter in response to her March 3, 2017 letter. Specifically, Erickson claimed that Plaintiff's lack of witnesses was determinative of the matter as Melville was "ready and willing to interview witnesses you might have, but did not present."

60.     On March 9, 2017, Plaintiff filed charges against Rollins with the International Brotherhood of Electrical Workers.

61.     On March 15, 2017, Plaintiff responded to Erickson's March 9, 2017 letter expressing her disagreement with his contentions and disparate treatment.

62.     On March 18, 2017, Defendant Local #3 issued Plaintiff a letter advising that Vice President Siegel assigned International Representative Richard Redmond to conduct an investigation into the charges Plaintiff filed against Rollins.

63.     On April 1, 2017, Union Member Melvin Smiley admitted to committing a crime of vandalism. Specifically, Smiley confessed on a video that he was ordered by Rollins to slash Plaintiff's tires, to which he complied.

64.     On April 17, 2017, Defendant Local #3 issued Plaintiff a letter advising that Redmond would meet with Plaintiff on May 15, 2017 to further investigate Plaintiff's charges against Rollins. The meeting was subsequently rescheduled to May 25, 2017.

65.     On July 27, 2017, International Representative issued Plaintiff a letter advising her of the time, place and date of the hearing scheduled in connection with her charges against Rollins.

66.     On August 22, 2017, a hearing was held to address Plaintiff's charges against Rollins.

67.     During the hearing Plaintiff noted on the record that she was unable to produce more witnesses as they were reluctant to come forward out of fear of retaliation. (Tr. at pgs. 19-

20, lines 7-25, 1). Plaintiff's Representative Hargrave clarified that the efforts to obtain witnesses for the hearing was "kind of a hinderance." (Tr. at pgs. 20-23, lines 5-25, 1-25, 1,25, 1-2).

68.   During the hearing, Daryl Spivey and former President Melvin Smiley testified on Plaintiff's behalf. Specifically, Spivey testified that Rollins often acted irate and verbally abusive towards Plaintiff. Further, Smiley testified that he saw Rollins "Los[e] his cool, a time or two." (Tr. at pg. 31, lines 5-6). Further, Smiley testified that he witnessed Rollins lose his cool around Plaintiff. (Tr. at pg. 31, lines 24-25). Moreover, Smiley that Rollins became loud and aggressive towards Plaintiff and that he felt uncomfortable with Rollins' treatment of Plaintiff. (Tr. at pgs. 32, 39 lines 16-24, 14-18). Additionally, Smiley implied that there was a culture of excluding individuals who opposed Rollins and that they did not experience the same opportunities as others and that Plaintiff was "on the outside." (Tr. at pg. 43, lines 11-24).

69.   Further, Smiley testified that after Plaintiff brought charges against Rollins, there was a consensus to "try to quiet her up and send her a message." (Tr. at pgs. 48, 51-52, lines 10-18, 21-1). In addition, Smiley testified that he had first-hand knowledge of the vandalism to Plaintiff's vehicles at her home. (Tr. at pg. 49, lines 1-25). Smiley also acknowledged that Rollins engaged in "frisky" conduct towards Plaintiff. (Tr. at pg. 53, lines 16-25). Further, Smiley testified that he witnessed Rollins engage in behavior towards Plaintiff that was not reciprocal. (Tr. at pg. 54, lines 1-6). Smiley also testified that he recalled Rollins referenced Plaintiff's body during a conversation. (Tr. at pg. 56, lines 17-21) Smiley also testified that an intermediary gave him a direct order from Rollins to slash Plaintiff's tires.

(Tr. at pg. 65, lines 6-15). Smiley's testimony is direct evidence of the hostile work environment and retaliation to which Rollins, on behalf of Local #3 subjected Plaintiff.

70.     During the hearing, Rollins pled not guilty to the charges against him.

71.     On October 4, 2017, Michael D. Welsh rendered his decision regarding the charges against Rollins. Specifically, Welsh determined that Rollins was partially guilty of violating Local #3's Constitution and was fined $5,000 in connection with the sexual harassment to which he subjected Plaintiff.

72.     On October 11, 2017, International Vice President Michael D. Welsh emailed Plaintiff advising her that her desire to appeal his decision regarding the charges against Rollins was denied as she did not have a right to an appeal.

73.     Defendants treated Plaintiff differently as compared to similarly-situated male employees. Specifically, Defendants discriminated against Plaintiff on the basis of her female sex and subjected her to unlawful sexual harassment. Further, Defendants retaliated against Plaintiff following her engagement in protected activity when she complained of the discrimination and sexual harassment to which she was subjected. Defendants, through their aforementioned conduct subjected Plaintiff to a hostile work environment.

## FIRST CAUSE OF ACTION AGAINST DEFENDANT
### (DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000)

74.     Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

75.     Plaintiff claims Defendants violated Title VII of the Civil Rights Act of 1964, as these titles appear in volume 42 of the United States Code, beginning at Section 2000.

76.     Title VII of the Civil Rights Act of 1964, Section 2000e-2, Section 703 "Employer Practices" states: "It shall be an unlawful employment practice for an employer – (1) to fail

or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

77.     Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her female sex and by subjecting her to unlawful sexual harassment.

78.     As described above, Defendant has discriminated against Plaintiff due to her gender by subjecting Plaintiff to adverse employment action and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964.

## SECOND CAUSE OF ACTION AGAINST DEFENDANT
### (RETALIATION IN VIOLATION OF 42 U.S.C. § 2000)

79.     Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

80.     Title VII prohibits retaliation.

81.     42 U.S.C. § 2000e-3 provides:

a)      It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

82.     As described above, Defendants violated this section as set forth herein.

## THIRD CAUSE OF ACTION AGAINST DEFENDANT
### (DISCRIMINATION IN VIOLATION OF N.Y. EXEC. LAW § 296)

83.     Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

84. The New York State Human Rights Law, N.Y. Exec. Law 296 provides, in pertinent part: "It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

85. Defendants violated this section as set forth herein.

## FOURTH CAUSE OF AGAINST DEFENDANT
## (RETALIATION IN VIOLATION OF N.Y. EXEC. LAW § 296)

86. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

87. The New York State Human Rights Law, N.Y. Exec. Law 296 provides, in pertinent part: "7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."

88. Defendants engaged in an unlawful employment practice by retaliating against Plaintiff.

## FIFTH CAUSE OF AGAINST DEFENDANT
## (DISCRIMINATION IN VIOLATION OF N.Y.C ADMIN. CODE § 8-107)

101. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

102. New York City Administrative Code § 8-107 provides, in pertinent part: "It shall be unlawful discriminatory practice: (a) For an employer or an employee or agent therefore,

14

because of the actual or perceived age, race, creed, color, national origin, gender, disability,
marital status, partnership status, sexual orientation or alienage or citizenship status of any
person, to refuse to hire or employ or to bar or to discharge from employment such person
or to discriminate against such person in compensation or in terms, conditions or privileges
of employment."

103.  Defendants engaged in an unlawful employment practice by discriminating against
Plaintiff and by subjecting her to unlawful sexual harassment.

**SIXTH CAUSE OF AGAINST DEFENDANT**
**(RETALIATION IN VIOLATION OF N.Y.C ADMIN. CODE § 8-107)**

104.  Plaintiff repeats, reiterates, and realleges each and every allegation made in the above
paragraphs of this Complaint as if more fully set forth herein at length.

105.  New York City Administrative Code § 8-107 provides, in pertinent part: "7. Retaliation.
It shall be an unlawful discriminatory practice for any person engaged in any activity to
which this chapter applies to retaliate or discriminate in any manner against any person
because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a
complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a
civil action alleging the commission of an act which would be an unlawful discriminatory
practice under this chapter, (iv) assisted the commission or the corporation counsel in an
investigation commenced pursuant to this title, or (v) provided any information to the
commission pursuant to the terms of a conciliation agreement made pursuant to section 8-
115 of this chapter. The retaliation or discrimination complained of under this subdivision
need not result in an ultimate action with respect to employment, housing or a public
accommodation or in a materially adverse change in the terms and conditions of
employment, housing, or a public accommodation, provided, however, that the retaliatory

15

or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity."

106.   Defendants engaged in an unlawful employment practice by retaliating against Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A.   Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.*, the New York State Human Rights Law, N.Y. Exec. Law 290. *et seq*., and the New York City Administrative Code § 8-101, *et seq* by discriminating against Plaintiff on the basis of her sex, by subjecting her to unlawful sexual harassment and by unlawfully retaliating against her following her engagement in protected activity;

B.   Awarding damages to the Plaintiff, resulting from Defendants' unlawful discriminatory and retaliatory actions against her and to otherwise make her whole for any losses suffered as a result of such unlawful employment practice;

C.   Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D.   Awarding Plaintiff punitive damages;

E.   Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F.   Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
      February 14, 2019

                    Respectfully submitted,

                    /s/_Nina A. Ovrutsky_
                    White, Hilferty & Albanese
                    *Attorneys for Plaintiff*
                    570 Lexington Avenue, 16th Floor
                    New York, New York 10022
                    Ph: (646) 690-8881